IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| OMAR GRAYSON, #R48244, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 15-cv-00198-NJR |
| | ) |
| JODY GOETTING | ) |
| and SALVADOR GODINEZ, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff, an inmate who is currently incarcerated at Pinckneyville Correctional Center ("Pinckneyville"), brings this action pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*, against Salvador Godinez (Illinois Department of Corrections' ("IDOC") director) and Jody Goetting (Pinckneyville's assistant warden) (Doc. 1).  According to the complaint, Plaintiff wears dreadlocks for religious reasons, and his religious beliefs prohibit him from removing them. Defendant Godinez instituted a policy within the IDOC that requires an inmate to cut his hair if it presents a security risk ("grooming policy").  Pursuant to the grooming policy, Defendant Goetting ordered Plaintiff to remove his religious dreadlocks for photo identification purposes. Plaintiff now sues Defendants Godinez and Goetting for violating his rights under the Free Exercise Clause of the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, and RLUIPA.  Plaintiff seeks monetary damages and injunctive relief, in the form of an order prohibiting prison officials from removing his dreadlocks[1] (Doc. 1, p. 12).

---

[1] This lawsuit is a sequel to one that Plaintiff already filed against the same defendants, which is also pending before this Court.  *See Grayson v. Goetting, et al.*, No. 13-cv-1251-NJR-DGW (S.D. Ill. 2013) ("related action").  In the

**Merits Review Under 28 U.S.C. § 1915A**

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b). The complaint survives threshold review under this standard.

**The Complaint**

According to the complaint, Plaintiff is a practitioner of the African Hebrew-Israelite religion (Doc. 1, p. 8). As part of his religious practice, Plaintiff has taken a vow that requires him to grow his hair into dreadlocks and also prohibits him from cutting his hair.

On September 6, 2013, Plaintiff transferred from Stateville Correctional Center ("Stateville") to Pinckneyville. In consideration of Plaintiff's religious beliefs, Stateville's warden granted Plaintiff permission to transfer without shearing his dreadlocks, after declaring him a "low security risk" (Doc. 1, p. 8).

Within a few days of his arrival at Pinckneyville, Plaintiff was informed that his dreadlocks would need to be removed before his photograph was taken for identification purposes. Plaintiff filed an emergency grievance on September 9, 2013. In it, he explained that his religious beliefs prohibited him from removing his dreadlocks. He also explained that the United States Court of Appeals for the Seventh Circuit had already addressed this issue in a

---

related action, United States Magistrate Judge Donald G. Wilkerson issued a Report and Recommendation on February 12, 2015 (Doc. 60, related action), recommending that Defendants' Motion for Summary Judgment on the Issue of Exhaustion be granted and the case be dismissed without prejudice. Plaintiff has since filed a motion seeking voluntary dismissal of that action (Doc. 61, related action). Both cases follow a lawsuit that Plaintiff filed in this District, challenging a similar policy at another prison. *See Grayson v. Schuler*, 666 F.3d 450 (7th Cir. 2012).

lawsuit that he initiated. *See Grayson v. Schuler*, 666 F.3d 450 (7th Cir. 2012). Plaintiff received no response to this emergency grievance.[2]

On September 18, 2013, Defendant Goetting visited Plaintiff's cell. He confirmed that Plaintiff was required to remove his dreadlocks for the photograph, but explained that Plaintiff could "put them back" after the photo was taken. Because dreadlocks present a security risk, Defendant Goetting explained, they must be removed before an inmate is photographed, and his photo identification card is created.[3] (Doc. 1, p. 9).

The complaint describes a second incident that recently occurred at Pinckneyville. This incident gives rise to Plaintiff's request for a preliminary injunction prohibiting Pinckneyville officials from removing his dreadlocks (Doc. 2). On February 17, 2015, Plaintiff's dreadlocks were evaluated by Pinckneyville's internal affairs officers.[4] These officers allegedly wanted to make sure that Plaintiff did not have "big, thick dreadlocks" (Doc. 1, p. 10). Officials took photographs of Plaintiff's hair and deemed it to be "searchable."

On February 20, 2015, Plaintiff was called back to Pinckneyville's Internal Affairs Office (Doc. 1, p. 10). There, Plaintiff learned that his dreadlocks would need to be removed for his updated photo identification because, although "searchable," the dreadlocks still presented a "security risk." He was given a "few days" to remove the dreadlocks on his own. He was warned that the tactical team would forcibly remove them, if Plaintiff declined to do so.

According to the complaint, the only practical way to "remove" dreadlocks is to shear them (Doc. 1, p. 8). It allegedly takes "weeks" to comb them out, and "the hair gets ripped and

---

[2] Plaintiff allegedly filed a second grievance in October 2013, and it was denied. Plaintiff claims that he exhausted all administrative remedies with respect to the grievance prior to commencing this action (Doc. 1, pp. 6-7).
[3] In the related action, Plaintiff further alleges that when faced with the decision to remove his own dreadlocks or endure their forcible removal, Plaintiff opted to remove them himself; however, his photograph was not taken (Doc. 1, p. 7, related action).
[4] Plaintiff has not named any internal affairs officers as defendants in this action.

torn out [in the process], resulting in having to ultimately get a haircut" anyway (Doc. 1, p. 8). Plaintiff alleges that "haircuts are inevitable for dreadlock removals" (*Id.*).

Plaintiff now sues Defendants Goetting and Godinez for creating and implementing a policy that violates his rights under the Free Exercise Clause of the First Amendment, the Equal Protection Clause of the Fourteenth Amendment (based on religion, race, and sex), and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq*.

## Discussion

In the complaint, Plaintiff asserts three claims against Defendants Godinez and Goetting, including a First Amendment free exercise claim (**Count 1**), a RLUIPA claim (**Count 2**), and a Fourteenth Amendment equal protection claim (**Count 3**).  Plaintiff shall be allowed to proceed with all three claims, subject to the limitations discussed below.

Plaintiff maintains that he should be exempt from the grooming policy.  Even if the policy is valid as applied to other inmates, Plaintiff seeks an "accommodation" because of his religious beliefs.  *See Lewis v. Stearnes*, 712 F.3d 1083, 1085 (7th Cir. 2013).  Plaintiff also claims that the policy is arbitrarily enforced against him and in favor of other inmate groups, such as Rastafarians.

**Counts 1 & 2 – First Amendment and RLUIPA**

Under the First Amendment, prisoners "retain the right to practice their religion to the extent that such practice is compatible with the legitimate penological demands of the state." *Al-Alamin v. Gramley*, 926 F.2d 680, 686 (7th Cir. 1991).  "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Reed v. Faulkner*, 842 F.2d 960, 962 (7th Cir. 1988) (quoting *Turner v. Safley*, 482 U.S. 78 (1987)).  The Seventh Circuit has upheld similar policies.  *See Grayson v.*

*Schuler*, 666 F.3d 450, 452 (7th Cir. 2012) ("The case law indicates that a ban on long hair, including dreadlocks, even when motivated by a sincere religious belief, would pass constitutional muster.") (citations omitted).

At the same time, the Court also has noted that an "open question" remains as to whether there is a "constitutional as distinct from a statutory right to a religious accommodation. . . ." *See id*. The Seventh Circuit has repeatedly observed that there is tension between the Supreme Court's decisions in *O'Lone v. Shabazz,* 482 U.S. 342, 348-50 (1987), and *Turner v. Safley*, 482 U.S. 78 (1987), both of which create a First Amendment duty of religious accommodation in prisons, and the Supreme Court's decision in *Employment Division v. Smith*, 494 U.S. 872 (1990), which denies a constitutional duty of religious accommodation in broad terms without overruling *O'Lone* or *Turner*. *See, e.g.*, *Grayson*, 666 F.3d at 452-53; *Lewis*, 712 F.3d at 1085.

What is clear is that RLUIPA creates a statutory right of accommodation. 42 U.S.C. § 2000cc-1; *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 335-36 (5th Cir. 2009). Congress enacted RLUIPA "in order to provide very broad protection for religious liberty." *Holt v. Hobbs*, --- U.S. ---, 135 S. Ct. 853 (Jan. 20, 2015) (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. ---, 134 S. Ct. 2751, 2760 (2014)). It confers greater religious rights on prisoners than the Free Exercise Clause has been interpreted to confer. *See* 42 U.S.C. § 2000cc-1; *Cutter v. Wilkinson*, 544 U.S. 709, 714-17 (2005). Specifically, RLUIPA prohibits prisons receiving federal funds from imposing a substantial burden on an inmate's religious exercise unless that burden: (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc–1(a)(1)–(2). And "[u]nlike cases arising under the Free Exercise Clause of the First Amendment, this prohibition applies even where the burden on the prisoner 'results from a rule of general

applicability.'" *Koger v. Bryan,* 523 F.3d 789, 796 (7th Cir. 2008) (quoting 42 U.S.C. § 2000cc–1 (a)).

Because of the distinctions between First Amendment and RLUIPA claims, including the applicable procedures and remedies, plaintiffs often proceed with claims under both. Plaintiff has done so here. At this early stage, he shall be allowed to proceed with Counts 1 and 2 against Defendants Godinez and Goetting. Based on the allegations and the request for relief, Plaintiff shall be allowed to proceed with **Count 1** against Defendants Godinez and Goetting in their individual and official capacities.

Plaintiff shall be allowed to proceed with **Count 2** against Defendants Godinez and Goetting only in their official capacities based solely on a request for injunctive relief. This is because sovereign immunity shields state officials from monetary damages in their official capacity, and RLUIPA does not allow for money damages against prison officials in their individual capacity. *Grayson,* 666 F.3d at 451; *Nelson v. Miller,* 570 F.3d 868, 886–89 (7th Cir. 2009). Therefore, injunctive relief is the only possible remedy that RLUIPA affords. Further, the proper parties in a claim for injunctive relief include the supervisory government officials who would be responsible for ensuring injunctive relief is carried out. *Gonzalez v. Feinerman,* 663 F.3d 311, 315 (7th Cir. 2011). In this case, Plaintiff has named two supervisory officials as defendants. Accordingly, **Count 2** shall proceed against both Defendants Godinez and Goetting, in their official capacities, but only as it pertains to his request for injunctive relief.

**Count 3 – Equal Protection**

Finally, at this early stage in the litigation, the Court also will allow Plaintiff to proceed with his Fourteenth Amendment equal protection claim (**Count 3**) against Defendants Godinez and Goetting. This claim was more narrowly defined in Plaintiff's related action. *See Grayson*

*v. Goetting, et al.*, No. 13-cv-1251-NJR-DGW (S.D. Ill. 2013) (Doc. 7, pp. 5-6, related action). There the Court explained that it typically analyzes similar claims under the most "explicit source[s] of constitutional protection." *Graham v. Connor,* 490 U.S. 386, 395 (1989). Given that he was allowed to proceed with his First Amendment and RLUIPA claims, the Court deemed it appropriate to dismiss the Fourteenth Amendment equal protection claim as being duplicative. *See Conyers v. Abitz,* 416 F.3d 580, 586 (7th Cir. 2005) (dismissing equal protection and Eighth Amendment claims based on same circumstances as a free exercise claim because the free exercise claim "gains nothing by attracting additional constitutional labels").

In the operative complaint, however, Plaintiff re-characterizes the claim. Plaintiff maintains that prison officials discriminated against him in favor of other inmate groups (i.e., Rastafarians) arbitrarily. He can proceed on this claim for now; however, the claim shall be dismissed if the exception for other inmate groups, such as Rastafarians, is not found to be arbitrary. *See Reed v. Faulkner*, 842 F.2d 960 (7th Cir. 1988). As the Seventh Circuit explained in *Reed*, "[t]his is not because discrimination between religions is deemed on a constitutional par with those purely 'economic' discriminations that the equal protection clause, in modern interpretations, treats so leniently, but because the religious dimension of the discrimination is governed by the religion clauses of the First Amendment, leaving for the equal protection clause only a claim of arbitrariness unrelated to the character of the activity allegedly discriminated against."

The Court finds Plaintiff's arguments regarding discrimination based on race and gender unavailing, even at this early stage. Plaintiff claims that the policy negatively impacts male inmates because women are allowed to wear dreadlocks. The policy also impacts inmates of African descent more often than other racial groups because they are more likely to wear

dreadlocks. But Plaintiff adds nothing to this claim by attempting to recast it as a race-based equal protection claim (as it is not at all uncommon for people of other races to wear dreadlocks) or a gender-based discrimination claim (as the allegations in support of this claim are conclusory and unsupported).

Within these parameters, Plaintiff shall be allowed to proceed with **Count 3** against Defendant Godinez and Goetting, in their individual and official capacities.

## Pending Motions

**1.    IFP Motion**

Plaintiff has filed a Motion for Leave to Proceed *In Forma Pauperis* ("IFP") in this case (Doc. 3), which shall be addressed in a separate Order of the Court.

**2.    Motion for Preliminary Injunction**

Plaintiff's request for a preliminary injunction (Doc. 2) is **REFERRED** pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c) to **United States Magistrate Donald G. Wilkerson.** Any motions filed after the date of this Order that relate to this request for injunctive relief or seek leave to amend the complaint are also hereby **REFERRED** to **United States Magistrate Judge Wilkerson**.

## Disposition

AS TO COUNTS **1, 2,** and **3**, the Clerk of Court shall prepare for **DEFENDANTS GOETTING** and **GODINEZ**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent,

the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Donald G. Wilkerson** for further pre-trial proceedings, including resolution of Plaintiff's request for a preliminary injunction (Doc. 2) as soon as practicable. If it becomes apparent that further action is necessary, the undersigned should be notified immediately. Further, this entire matter shall be **REFERRED** to **United States Magistrate Judge Wilkerson** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to*

*such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, whether or not his application to proceed *in forma pauperis* is granted. See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. See FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: February 27, 2015**

**s/ NANCY J. ROSENSTENGEL**
**NANCY J. ROSENSTENGEL**
**United States District Judge**
